JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 6 2008

FILED
CLERK'S OFFICE

**MDL 1989**

**BEFORE THE JUDICIAL PANEL ON
MULTI-DISTRICT LITIGATION**

In re:                                          )
                                                )
SEMGROUP ENERGY PARTNERS                         )
SECURITIES LITIGATION                            )        MDL Docket No. _____
                                                )

<u>**PLAINTIFF'S AMENDED MOTION FOR TRANSFER UNDER 28 U.S.C. § 1407**</u>

Craig Carson ("Carson"), plaintiff in the case styled *Carson v. SemGroup Energy Partners, L.P., et al.,* United States District Court for the Northern District of Oklahoma, Case Number 08-CV-425 (the "*Carson* action"), hereby moves for an Order for consolidation and transfer of pretrial proceedings under 28 U.S.C. §1407 for the following actions:

- *Craig Carson v. SemGroup Energy Partners, L.P., et al.,* N.D. Okla. Case No. 08-CV-00425

- *Erik M. Poelman v. SemGroup Energy Partners, L.P., et al.,* S.D.N.Y. Case No. 08-CV-06477

- *Charles D. Maurer SIMP Profit Sharing Plan F/B/O Charles D. Maurer v. SemGroup Energy Partners, L.P., et al.,* S.D.N.Y. Case No. 08-CV-6598

Plaintiff Craig Carson's Motion to Transfer Pursuant to Section 1407 should be

OFFICIAL FILE COPY IMAGED AUG 6 2008

PLEADING NO. - 1

granted and all of these related actions, as well as any subsequently filed actions against SemGroup containing similar allegations should be transferred to the United States District Court for the Northern District of Oklahoma.

Respectfully submitted,

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
FAX: (405) 239-2112
wbf@federmanlaw.com

Attorneys for Plaintiff Craig Carson

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 6 2008

FILED
CLERK'S OFFICE

## REVISED PROOF OF SERVICE

I hereby certify that true and correct copies of the foregoing document have been served on all parties specified below on this _____ day of August, 2008.

Court Clerk
U.S.D.C. Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Court Clerk
U.S.D.C. Northern District of Oklahoma
411 Page Belcher Federal Bldg and United States Courthouse
333 West Fourth Street
Tulsa, OK 74103-3819

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs (RLJ-0286)
60 East 42nd Street, 46th Floor
New York, NY 10165

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz (LP-7324)
60 East 42nd Street, 46th Floor
New York, NY 10165

**Attorneys for Plaintiff Erik M. Poelman**

**WOLF POPPER LLP**
Robert C. Finkel
Natalie M. Mackiel
845 Third Avenue
New York, NY 10022

**Attorneys for Plaintiff Charles D. Maurer**

SemGroup Energy Partners, L.P.
C/O Michael D. Cooke, Service Agent
320 South Boston, Suite 400
Tulsa, OK 74103

**Service agent for Defendant SemGroup
Energy Partners, L.P.**



SemGroup Energy Partners G. P., L.L.C.
C/O Michael D. Cooke, Service Agent
320 South Boston, Suite 400
Tulsa, OK 74103

**Service agent for Defendant SemGroup
 Energy Partners G.P., L.L.C.**

Kevin L. Fox
Two Warren Place
6120 S. Yale Ave., Suite 700
Tulsa, OK 74136-4216
**Defendant**

Gregory  C. Wallace
Two Warren Place
6120 S. Yale Ave., Suite 700
Tulsa, OK 74136-4216
**Defendant**

Alex Stallings
Two Warren Place
6120 S. Yale Ave., Suite 700
Tulsa, OK 74136-4216
**Defendant**

Citigroup Global Markets, Inc.
ATTN:  General Counsel
388 Greenwich St.
New York, NY 10013
**Defendant**

Lehman Brothers, Inc.
C/O The Prentice-Hall Corporation System, Inc., Service Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808

**Service agent for Defendant Lehman Brothers, Inc.**

William B. Federman

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG ~ 6 2008

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTI-DISTRICT LITIGATION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SEMGROUP ENERGY PARTNERS | ) | |
| SECURITIES LITIGATION | ) | MDL Docket No. _____ |
| | ) | |

### PLAINTIFF'S AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR
### TRANSFER UNDER 28 U.S.C. § 1407

Craig Carson ("Carson"), plaintiff in the case styled *Carson v. SemGroup Energy Partners, L.P., et al.,* United States District Court for the Northern District of Oklahoma, Case Number 08-CV-425 (the "*Carson* action"), files this motion for consolidation and transfer of pretrial proceedings under 28 U.S.C. §1407.

## I.      INTRODUCTION

The actions that Carson seeks to consolidate are securities class action lawsuits against SemGroup Energy Partners, L.P.[1], SemGroup Energy Partners G.P., LLC, ("SGLP"), Kevin L. Foxx, Gregory C. Wallace and Alex Stallings (collectively "Defendants") alleging violations of the Securities Exchange Act of 1934 (the "Exchange

---

[1]    On July 22, 2008, SemCrude, L.L.P., Defendants' parent company, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware, Case No. 08-11525-BLS.

Act") between February 20, 2008 and July 17, 2008 (the "Class Period"). All Defendants are believed to reside in the Northern District of Oklahoma. The actions allege violations of Section 10(b) of the Exchange Act and Rule 10b-5 and violations of Section 20(a) of the Exchange Act. The plaintiffs in the three (3) actions filed to date seek to recover damages associated with the artificially inflated purchase price of SGLP common stock. Generally, Plaintiffs in these actions allege that SGLP and Defendants issued false and misleading statements which artificially inflated the purchase price of SGLP common stock during the Class Period. When the Defendants' prior misrepresentations and fraudulent conduct were disclosed, the price of SGLP common stock fell precipitously as the prior artificial inflation was dissipated. As a result of their purchases of SGLP common units during the Class Period, Plaintiff and the other Class members suffered economic losses.

Carson seeks the consolidation and transfer of these cases to the Northern District of Oklahoma. All of the class actions filed against Defendants contain common allegations and common questions of fact.

## II.    PROCEDURAL HISTORY

A schedule of involved actions is attached hereto as Exhibit "A."

### A.    The Northern District of Oklahoma Action.

On July 22, 2008, the *Carson* action was filed in the United States District Court for the Northern District of Oklahoma. The *Carson* action alleges claims for violations of Section 10(b) of the Exchange Act and Rule 10b-5 and violations of Section 20(a) of the Exchange Act and seeks certification of a nationwide class of all persons who purchased or otherwise acquired the common stock of SGLP from February 20, 2008 through July

17, 2008.  The original *Carson* Complaint and Docket Sheet are attached hereto as Exhibit "B."

### B.    The Southern District of New York Actions

#### 1.    The *Poelman* Action

On July 21, 2008, the case styled *Poelman v. SemGroup Energy Partners, L.P., et al.,* United States District Court for the Southern District of New York; Case Number 08-CV-6477 (the "*Poelman* action") was filed.  The *Poelman* action alleges claims for violations of Section 10(b) of the Exchange Act and Rule 10b-5 and violations of Section 20(a) of the Exchange Act and seeks certification of a nationwide class of all persons who purchased or otherwise acquired the common stock of SGLP from February 20, 2008 through July 17, 2008.  The original *Poelman* Complaint and Docket Sheet are attached hereto as Exhibit "C."

#### 2.    The *Maurer* Action

On July 24, 2008, the case styled *Charles D. Maurer SIMP Profit Sharing Plan F/B/O Charles D. Maurer v. SemGroup Energy Partners, L.P., et al.,* United States District Court for the Southern District of New York, Case Number 08-CV-6598 (the "*Maurer* action") was filed.  The *Maurer* action alleges claims for violations of Section 11 of the Exchange Act and seeks certification of a nationwide class of all persons or entities who purchased units of SGLP pursuant to or traceable to the February 12, 2008 Registration Statement.  The original *Maurer* Complaint and Docket Sheet are attached hereto as Exhibit "D."

## III.   LEGAL STANDARD

Actions containing allegations with common questions of fact may be transferred

and consolidated under Section 1407 if transfer will be for the convenience of the parties and witnesses, and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407.  The Panel typically considers the following four factors in deciding whether to transfer a case under Section 1407:

    a.      the elimination of duplication in discovery;

    b.      the avoidance of conflicting rules and schedules;

    c.      the reduction of litigation cost; and

    d.      the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

*See*, Manual for Complex Litigation (Third) § 31.131 (1995) (citing *In re Plumbing Fixture Cases*, 298 F.Supp. 484 (J.P.M.L. 1968)).  Each of these factors favors transfer and consolidation of the three cases filed against Defendants.

## IV.   ARGUMENT

### A.   The Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.

Pretrial transfer and consolidation under Section 1407 is appropriate and necessary.  These cases involve the same allegations and legal standards and they are numerous.  Unless these cases are consolidated, the parties will incur excess costs due to duplicative discovery, and will face the risk of inconsistent rulings on a variety of matters.

#### 1.   The Litigation Involves Common Questions of Fact.

In assessing the appropriateness of consolidation under Section 1407, the Panel looks to the pleadings to determine the extent that common questions of fact are present. The Panel frequently orders the transfer and consolidation of antitrust actions.  *See, In re*

*Air Cargo Shipping Services Antitrust Litigation*, MDL 1775; *In re Methyl Methacrylate (MMA) Antitrust Litigation*, MDL 1768; *In re Ditropan XL Antitrust Litigation*, MDL 1761.

The complaints in these cases clearly present common questions of fact involving Oklahoma citizens.   Each complaint is based on allegations that the Defendants disseminated false and/or misleading statements which artificially inflated the prices of SGLP common stock and operated as a fraud or deceit on Class Period purchasers of SGLP common stock.   Furthermore, all the Complaints contain the same Class Period of February 20, 2008 through July 17, 2008.

### 2.    The Parties Face Duplicative Discovery Absent Transfer and Consolidation.

Because the allegations of all the cases are virtually identical, the parties in these cases face duplicative discovery if these cases are not consolidated and transferred.  This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Res. Exploration*, 483 F.Supp. at 821.

The Parties in these actions will clearly engage in duplicative discovery.   All Plaintiffs will be seeking the same documentation from Defendants, they will seek to depose the same defendants, and undoubtedly Defendants will raise the same class certification objections, discovery objections and seek the same protective orders and privileges in each case.   However, if the Panel consolidates and transfers the cases, the parties will coordinate their efforts and thus save all parties time and money.

### 3.    Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible res judicata or collateral estoppel effects on the other cases. For example, the Panel granted a transfer in part to prevent inconsistent pretrial rulings in *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 196 F.Supp.2d1375, 1376 (J.P.M.L. 2002). Because of the similarity of the allegations in each of the Complaints, the possibility of inconsistent rulings on pretrial motions is substantially increased.

Defendants are likely to present the same pretrial motions in each action and assert the same discovery objections and privileges. For example, the scope of discovery may be at issue; Defendants may wish to seek confidentiality agreements; and Defendants BP will most likely file Motions to Dismiss and Motions for Summary Judgment. Inconsistent rulings would pose a serious problem because the purported Class is identical in each action.

Because of the similarity of the allegations in each action, Defendants will surely mount the same defenses in each case. There is therefore a real risk of inconsistent pretrial rulings in each case. Because of this risk, it is in the best interest of all parties and of the Courts to consolidate and transfer these actions, thus preventing any situations where inconsistent pretrial rulings affect the actions.

### 4. There is sufficient numerosity to support transfer and consolidation.

There are currently at least three cases pending in two different districts. The Panel has routinely ordered consolidation and transfer of three or fewer cases. *See*, e.g. *Wireless Tel.*, 180 F.Supp.2d at 1382 (granting transfer of three consumer protection actions); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F.Supp.2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases); *In re*

*Amoxicillin Patent & Antitrust Litig.*, 449 F.Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and antitrust issued); and *In re Alodex Corp. Securities Litig.*, 380 F.Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions). Thus, there is sufficient numerosity to support the transfer and consolidation of these cases.

> **B.    The Northern District of Oklahoma is the Appropriate Transferee Forum.**

An analysis of the various courts' caseloads, the applicable facts and the relevant case law reveals that the Northern District of Oklahoma is the preferable court for consolidation of pretrial proceedings.

SGLP is a public limited partnership run by its general partner, SemGroup G.P. LLC, a wholly owned subsidiary of SemGroup L.P. SGLP's headquarters is located in Tulsa, Oklahoma. The Individual Defendants also reside in Oklahoma. Because the Defendants are located in the Northern District of Oklahoma, the majority of the actions occurred in the northern District of Oklahoma, and because most of the witnesses and documents will be located in the Northern District of Oklahoma, it is the most convenient venue for transfer of the actions.

In addition, the U.S. Attorney's Office in Oklahoma City (the Western District of Oklahoma) has issued subpoenas to SemGroup Energy demanding records related to its disclosures. Also, Bank of America, N.A. has filed a lawsuit against Tom Kivisto, SemGroup LP co-founder, and the Thomas L. Kivisto Trust, in the Northern District of Oklahoma (Case No. 08-CV-432) for payment of a promissory note. Thus, it appears that the nexus of related litigation and investigations is in the State of Oklahoma.

Furthermore, should there be any concern regarding judicial conflicts, the actions

could be transferred to the Western District of Oklahoma as was recently done in In re Williams Securities Litigation, Case No. 02-CV-72 (transferring case to the Hon. Stephen P. Friot of the Western District of Oklahoma. Judge Friot has experience in MDL proceedings, See, In re Farmers Insurance Co. Inc. FCRA Litigation, MDL No. 1564).

## V.    CONCLUSION.

Based upon the foregoing, Plaintiff Craig Carson's Motion to Transfer Pursuant to Section 1407 should be granted and all of these related actions, as well as any subsequently filed actions against SemGroup containing similar allegations should be transferred to the United States District Court for the Northern District of Oklahoma.

Respectfully submitted,

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania
Oklahoma City, OK 73120
Telephone: (405) 235-1560
FAX: (405) 239-2112
wbf@federmanlaw.com

Attorneys for Plaintiff Craig Carson

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 6 2008

FILED
CLERK'S OFFICE

## REVISED PROOF OF SERVICE

I hereby certify that true and correct copies of the foregoing document have been served on all parties specified below on this ___4th___ day of August, 2008.

Court Clerk
U.S.D.C. Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Court Clerk
U.S.D.C. Northern District of Oklahoma
411 Page Belcher Federal Bldg and United States Courthouse
333 West Fourth Street
Tulsa, OK 74103-3819

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs (RLJ-0286)
60 East 42nd Street, 46th Floor
New York, NY 10165

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz (LP-7324)
60 East 42nd Street, 46th Floor
New York, NY 10165

**Attorneys for Plaintiff Erik M. Poelman**


**WOLF POPPER LLP**
Robert C. Finkel
Natalie M. Mackiel
845 Third Avenue
New York, NY 10022

**Attorneys for Plaintiff Charles D. Maurer**

SemGroup Energy Partners, L.P.
C/O Michael D. Cooke, Service Agent
320 South Boston, Suite 400
Tulsa, OK 74103

**Service agent for Defendant SemGroup
 Energy Partners, L.P.**



SemGroup Energy Partners G. P., L.L.C.
C/O Michael D. Cooke, Service Agent
320 South Boston, Suite 400
Tulsa, OK 74103

**Service agent for Defendant SemGroup**
 **Energy Partners G.P., L.L.C.**

Kevin L. Fox
Two Warren Place
6120 S. Yale Ave., Suite 700
Tulsa, OK 74136-4216
**Defendant**

Gregory  C. Wallace
Two Warren Place
6120 S. Yale Ave., Suite 700
Tulsa, OK 74136-4216
**Defendant**

Alex Stallings
Two Warren Place
6120 S. Yale Ave., Suite 700
Tulsa, OK 74136-4216
**Defendant**

Citigroup Global Markets, Inc.
ATTN:  General Counsel
388 Greenwich St.
New York, NY 10013
**Defendant**

Lehman Brothers, Inc.
C/O The Prentice-Hall Corporation System, Inc., Service Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808

**Service agent for Defendant Lehman Brothers, Inc.**

William B. Federman

**A**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

AUG - 6 2008

FILED
CLERK'S OFFICE

## SCHEDULE OF INVOLVED ACTIONS

*Craig Carson, on behalf of himself and all others similarly situated v. SemGroup Energy Partners, L.P., SemGroup Energy Partners G.P. LLC, Kevin L. Foxx, Gregory C. Wallace, and Alex Stallings*
United States District Court for the Northern District of Oklahoma
Case Number 08-CV-00425
Judge Gregory K. Frizzell
Filed July 22, 2008

*Erik M. Poelman, on behalf of himself and all others similarly situated v. SemGroup Energy Partners, L.P., SemGroup Energy Partners G.P. LLC, Kevin L. Foxx, Gregory C. Wallace, and Alex Stallings*
United States District Court for the Southern District of New York
Case Number 08-CV-06477
Judge Paul A. Crotty
Filed July 21, 2008

*Charles D. Maurer SIMP Profit Sharing Plan F/B/O Charles D. Maurer, on behalf of itself and all others similarly situated v. SemGroup Energy Partners, L.P., SemGroup Energy Partners G.P. LLC, Kevin L. Foxx, Gregory C. Wallace, Alex Stallings, CitiGroup Global Markets Inc. and Lehman Brothers, Inc.*
United States District Court for the Southern District of New York
Case Number 08-CV-6598
Judge: unknown at this time
Filed July 24, 2008



RECEIVED
CLERK'S OFFICE

JUL 3 0 2008

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**B**

DISCREF

# U.S. District Court
## U.S. District Court for the Northern District of Oklahoma (Tulsa)
### CIVIL DOCKET FOR CASE #: 4:08-cv-00425-GKF-PJC

Carson v SemGroup Energy Partners, L.P. et al
Assigned to: Judge Gregory K Frizzell
Referred to: Magistrate Judge Paul J Cleary
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 07/22/2008
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

**Plaintiff**

**Craig Carson**
*on behalf of himself and all others similarly
situated*

represented by **Laurence D Paskowitz**
Paskowitz & Associates
60 E 42ND ST FLR 46TH
NEW YORK, NY 10165
212-685-0969
Fax: 212-685-2306
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roy L Jacobs**
Roy Jacobs & Associates
60 E 42ND ST FLR 46TH
NEW YORK, NY 10165
212-867-1156
Fax: 212-504-8343
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stuart William Emmons**
Federman & Sherwood
10205 N PENNSYLVANIA
OKLAHOMA CITY, OK 73120
405-235-1560
Fax: 405-239-2112
Email: swe@federmanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Bernard Federman**
Federman & Sherwood
10205 N PENNSYLVANIA
OKLAHOMA CITY, OK 73120
405-235-1560
Fax: 405-239-2112
Email: wfederman@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SemGroup Energy Partners, L.P.**

**Defendant**

**SemGroup Energy Partners G. P., LLC**

**Defendant**

**Kevin L Foxx**

**Defendant**

**Gregory C Wallace**

**Defendant**

**Alex Stallings**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/22/2008 | 1 | CIVIL COVER SHEET by Craig Carson (s-tjc, Dpty Clk) (Entered: 07/22/2008) |
| 07/22/2008 | 2 | COMPLAINT with Jury Demand against all defendants by Craig Carson (s-tjc, Dpty Clk) (Entered: 07/22/2008) |
| 07/22/2008 | 3 | SUMMONS Issued by Court Clerk as to SemGroup Energy Partners, L.P. (s-tjc, Dpty Clk) (Entered: 07/22/2008) |
| 07/22/2008 | 4 | FILING FEES Paid in Full by Craig Carson (s-tjc, Dpty Clk) (Entered: 07/22/2008) |

| PACER Service Center | | |
|------------------|---|---|
| **Transaction Receipt** | | |
| 07/29/2008 11:30:09 | | |
| **PACER Login:** | db0535 | **Client Code:** semgroup |
| **Description:** | Docket Report | **Search Criteria:** 4:08-cv-00425-GKF-PJC |
| **Billable Pages:** | 1 | **Cost:** 0.08 |

**FILED**

JUL 2 2 2008

Phil Lombardi, Clerk
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) CRAIG CARSON, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| (1) SEMGROUP ENERGY PARTNERS, L.P., (2) SEMGROUP ENERGY PARTNERS G. P., LLC; (3) KEVIN L. FOXX; (4) GREGORY C. WALLACE; and (5) ALEX STALLINGS, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**08 CV - 4 2 5 GKF   PJC**

Case No. _____

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT FOR
## VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff, individually and on behalf of all others similarly situated, by his attorneys, alleges the following based on the investigation of his counsel, except as to allegations specifically pertaining to Plaintiff and his counsel, which are based on personal knowledge. The investigation of counsel is predicated on, among other things, a review of public filings by SemGroup Energy Partners, L.P. ("SGLP," "Partners," or the "Company") with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, statements made by Company executives during public telephone conferences, media reports about the Company, and publicly available trading data relating to the price and volume of SGLP common units.



## SUMMARY OF THE ACTION AND FACTUAL BACKGROUND

1.     This is a securities class action on behalf of all purchasers of the common units of SGLP between February 20, 2008 and July 17, 2008 (the "Class Period") for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

2.     SGLP is a public limited partnership run by its general partner, SemGroup G.P. LLC (the "General Partner"), a wholly owned subsidiary of SemGroup L.P. (the "Parent").   The Parent is a private company with significant operations in the oil business.   In 2007 SGLP was partially spun off via a public offering, with the Parent retaining a 49% interest.   A number of the directors and officers of the General Partner are officers of the Parent.   As an entity in the oil business, the Parent was a party to a number of hedge transactions related to the price of crude oil.   Hedging the price of crude oil has become a difficult endeavor, since the price is marked by large swings in value and high volatility.   Betting wrong on which way prices are going can leave a hedging party in huge financial difficulty.

3.     During the last several years the price of crude oil has rocketed in an extremely volatile marketplace, with the potential for large dips:

   a.     In the fall of 2007 oil prices rose to an all-time high of $80.00 per barrel;

   b.     On October 19, 2007, U.S. light crude rose to a new high of $90.02 per barrel.  Prices fell briefly then rose again rapidly to a peak of $92.22 on October 26, 2007;

   c.     Prices increased throughout late October and early November.  On November 7, 2007 light crude oil reached another record, closing at $98.10 per barrel.  On November 21, 2007, oil prices rose to a new high of $99.29 per barrel;

   d.     On January 2, 2008, U.S. light crude surpassed the psychological barrier of $100 before falling to $99.69;

2

e.  The price of oil once again rose to $100.10 a barrel on February 19, 2008.  Oil prices rose above $101 a barrel February 27, 2008.  Oil prices surpassed $103.00 a barrel February 29, 2008;

f.  Oil prices continued to rise to $104.00 on March 3, 2008.  Oil hit $111.00 per barrel on March 13, 2008, before sliding back to below $110.00.  The record was again broken on March 17, 2008, with U.S. light sweet crude reaching $111.80.  On April 15, 2008 the price of oil broke the $114.00 mark for the first time.  The price increased to $115.07/barrel on April 16, 2008, and increased again to $117.00 per barrel on April 18, 2008.  Oil prices rose to a new high of $119.90 a barrel on April 22, 2008, before dipping and then rising $3.00 on April 25, 2008 to $119.10;

g.  On May 9, 2008, the oil price exceeded $125.00 per barrel for the first time;

h.  On June 28, crude hit a record of $142.99.  Oil rose on July 1 to a record  per barrel price of  $143.67;

i.  On July 3 London Brent crude reached a record of $145.75 a barrel.  On July 11, oil hit another record of $147.00 a barrel;

j.  On July 15, a sell-off began resulting in an $8.00 drop.  By the end of that week, crude oil had fallen by 11% to $128.00.

4.      During early 2008, the Parent was caught up in very risky oil hedging transactions.  The Parent bet wrong on these hedges and began to suffer margin calls which it had trouble meeting, and had to cover transactions that had declined, and which began to severely impact its business and cause-liquidity problems.  Rather than disclose its difficulties at the start of the Class Period, when SGLP made a large secondary offering of common stock which yielded approximately $137 million proceeds (the "Offering"), the Defendants used the Offering as a vehicle to provide much needed cash to the Parent through the sale to SGLP of the Parent's liquid asphalt cement business.  The Parent was described in very positive terms in the Offering.  In fact, however, it was in financial trouble due to its aggressive, undisclosed hedging

3

transactions and was teetering on the brink of disaster if oil prices rose any further, which was not revealed. By discussing the positive benefits of the relationship between SGLP and the Parent at length in the Offering and in subsequent filings with the SEC, Defendants had an ongoing affirmative duty to disclose material negative information about the Parent to the investing public.

5.     SGLP provides terminalling, storage, gathering, and transportation services for companies engaged in the production, distribution, and marketing of crude oil. It owns and operates an aggregate of approximately 6.7 million barrels of storage capacity. These oil-related assets were contributed to the Company by the Parent in connection with the Company's initial public offering in July 2007. The Company also owns and operates 46 liquid asphalt cement terminals, which provide liquid asphalt cement terminalling and storage services in the markets of continental United States. The Company is based in Tulsa, Oklahoma. SGLP is a subsidiary of the Parent.

6.     As noted above, on or about February 20, 2008 the Company effected the Offering, which involved the sale of 6 million common units at $23.90 per unit for proceeds of $137 million. The purpose of the Offering was to permit the Company to raise funds to acquire the Parent's asphalt business for $378.5 million. In addition to using the proceeds from the Offering, the Company revealed that it would borrow an additional $241 million to complete the acquisition. The Prospectus described the throughput agreement which had been previously entered into with respect to the Company's ownership and operation of the Parent's crude oil gathering business which had been conveyed to the Company in connection with the Company's initial public offering. Pursuant to the throughput agreement the Parent had obligated itself to make

4

significant payments to the Company for services rendered by the Company to the Parent in gathering crude oil for delivery to refiners, pipelines or storage facilities. The throughput agreement is a very materially beneficial contract to the Company, and provides the Company with significant revenue. Anything which would put that agreement in jeopardy would be highly material. In connection with the acquisition of the asphalt business, the Company entered into a terminalling agreement with the parent which was to provide substantial revenues to the Company in connection with the Company's operation of the asphalt business. Anything which would put that agreement in jeopardy would be highly material. In addition there was extensive discussion about the Company's interaction with the Parent and its effects on the Company's business and prospects. The Company is dependant on the Parent for labor, since the Company has few employees. The Prospectus disclosed that the Parent intended to use the proceeds received by it from the sale of the asphalt business to pay down its indebtedness. There was extensive discussion in the Prospectus concerning the Company's relationship with the Parent and the impact of that relationship on the Company's business. (February 13, 2008 Prospectus pp. 52-56; 69-80) At no time however did the Prospectus reveal that the Parent was suffering from liquidity problems, or that it was engaged highly risky crude oil hedge transactions which could affect its ability to continue as a going concern should oil prices further increase. Anything which was materially negative concerning the Parent would be material to the Company.

7.     Thereafter, on March 6, 2008, the Company filed its Annual Report on Form 10-K for the year ending December 31, 2007. While the report extolled the virtues

of the relationship with the Parent, there was no revelation that the Parent was in serious financial trouble, or had invested in highly risky crude oil hedges which put the Company's future in serious jeopardy. Thus, Defendants did not correct the misstatements and omissions contained in the Prospectus with respect to the February Offering. The Report was signed by Defendants, the General Partner, Foxx, Stallings and Wallace.

8.      On May 8, 2008, the Company filed its Quarterly Report on Form 10-Q for the quarter ending March 31, 2008. While the Report discussed the extensive business relationship between the Company and the Parent, there was no revelation that the Parent was in serious financial trouble, or had invested in highly risky hedges which put the Company's future in serious jeopardy. Thus, Defendants did not correct the misstatements and omissions contained in the Prospectus with respect to the February Offering. The Report was signed by Defendants, the General Partner and Stallings.

9.      In the period post the Offering, SGLP units traded in the $24-27 range reflecting that, as far as the investing public was aware, the Company was operating according to its business plan. However, by July 11, 2008, SGLP unit values began to decline on increased trading volume, despite the release of no adverse news. Then on July 17, 2007 SGLP unit price decline 50% to $11.00 on greatly increased volume of 5.7 million units, as a result of leakage of the material adverse news which had been withheld by Defendants. As a result of the widespread leakage, the Defendants were finally forced to issue a statement which they did after the market closed on July 17, 2008, and which stated in relevant part:

TULSA, Okla.--(BUSINESS WIRE)--SemGroup Energy Partners, L.P. (NASDAQ: SGLP), has been informed by SemGroup, L.P., SGLP's

6

Parent, that SemGroup, L.P. is experiencing liquidity issues and is exploring various alternatives, including raising additional equity, debt capital or the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

Kevin Foxx, SemGroup Energy Partners' President and Chief Executive Officer, stated that,

"While SGLP's parent is experiencing liquidity challenges, SGLP's assets provide important terminalling and storage services to the energy industry. We own valuable assets in strategic locations and remain positioned to provide midstream services. Until our parent advises us of their course of action, we cannot fully evaluate and are not yet prepared to comment on how any such action taken by our parent might affect SGLP."

SGLP derives a substantial majority of its revenues pursuant to a Throughput Agreement and a Terminalling and Storage Agreement with SemGroup, L.P. and its subsidiaries. In addition, SGLP has entered into an Amended and Restated Omnibus Agreement and other agreements with SemGroup, L.P. that address, among other things, the provision of general and administrative and operating services to SGLP.

10.     SGLP units declined materially on July 18, 2008 dropping from $11.00 to $8.30 on materially increased volume of 9.8 million units. Thus in two days, SGLP units had dropped over 63% in value, wiping out over $300 million of in the public unitholders' equity.

11.     Various analysts discussed the fallout from this announcement as reported by MarketWatch on July 18, 2008 in an article entitled "Analysts cite possible problems at SemGroup LP tied to high oil prices:"

NEW YORK (MarketWatch) -- SemGroup Energy Partners L.P. said its corporate parent is considering filing for bankruptcy, casting doubts over one of its key revenue sources just one year after the oil-pipeline owner went public along with a crop of other energy partnerships.

SGLP fell 25% to close at $8.30 as one of the biggest decliners Friday on the NASDAQ, following a 50% drop in the previous session on downgrades by debt rating agencies.

Analysts raised the possibility that SemGroup LP -- the privately held parent of the public Energy Partners unit - may be falling victim to higher oil prices.

"While SemGroup has been running an operationally sound business with attractive regional business niches and adequate hedged margins, in Moody's view the over 50% rise in sector oil prices since March 31 is likely to have pressured its liquidity position," Moody's analyst Andrew Oram said in a note on Thursday. "Highly volatile hydrocarbon prices would have been challenging to its hedged trading business."

Dan Pickering of Tudor Pickering Holt told Dow Jones Newswires that SemGroup LP wrongly bet on crude price to go down earlier this year.

*"As crude went up, they were forced to cover, and so added additional buying power to the market," he said. "In other words, the higher crude went, the more money they lost."*

Moody's Andrew Oram said he anticipates much higher funding needs for hydrocarbon inventories and accounts receivables and the posting of much higher cash margin deposits given that the rapid pace of price increase would yield market prices that exceed the prices of existing exchange traded hedges.

SemGroup L.P. owns a 40% limited partner interest and a 2% general partner interest in SemGroup Energy Partners.

Fitch Ratings cut its view on about $2.6 billion in debt held by SemGroup LP, SemCrude LP and SemCAMS Midstream Co. The downgrade came amid an 11% slide in crude prices this week, before futures regained their footing Friday.

The Tulsa, Okla. owner of petroleum storage and transportation assets said late Thursday SemGroup L.P. is exploring various alternatives to bankruptcy protection, including raising additional equity, seeking debt capital or filing a voluntary petition for reorganization.

On Friday, Terry Ronan was named SemGroup, L.P. president and chief executive officer.

Kevin Foxx remains president and chief executive officer of SemGroup Energy Partners, L.P.

12.    The Fitch Ratings Agency issued a downgrade of SemGroup LP and several of its related entities and placed the company on Rating Watch stating:

Approximately $2.6 billion of debt is affected by these actions.  The downgrades and Watch Negative status reflect liquidity pressures related to the sustained elevated level of crude oil prices and SemGroup's ability to continue its marketing and storage businesses in the current price environment.

Spot prices for WTI crude at Cushing, OK have increased by as much as 43% since April 1, 2008.  SemGroup hedges a large percentage of its inventories and would be required to post additional margin to increase the collateral support for its hedging program.  Specifically, Fitch is concerned that the company may not have sufficient available capacity from its bank facilities to meet requests for additional margin.

SemGroup is a privately held midstream energy partnership focused primarily on providing gathering, transportation, processing, and marketing services for crude oil and refined products in the U.S. Midcontinent region and Canada.    Additionally,    through    its   SemMaterials   subsidiary, SemGroup stores, transport and markets asphalt and asphalt products in the United States and Mexico.  The company is currently owned by management and various private equity investors, including Ritchie Capital Management and Carlyle/Riverstone Global Energy and Power Fund II."

13.    Subsequently, lenders seized control of SGLP after reviewing SGLP's books and records, ousting management, including Tom Kivisto and Defendant Kevin Foxx, noting concerns about the Company's ability to meet margin requirements on its hedged trading activity.

## JURISDICTION AND VENUE

14.    The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j (b) and 78t (a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction exists pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

15.    Venue is proper in this District because many of the wrongful acts alleged herein took place or originated in this District.

16.     Defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets in connection with the wrongful activity alleged herein.

## PARTIES

17.     Plaintiff purchased SGLP common units during the Class Period as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

18.     Defendant SGLP is a Delaware limited partnership.  SGLP common units trade on the NASDAQ under the symbol "SGLP."

19.     Defendant Kevin L. Foxx ("Foxx") co-founded the Parent in April 2000 and was, until being ousted by the Company's lenders, the Parent's Executive Vice-President and Chief Operating Officer.  He also served as executive Vice-President and Chief Operating Officer of SemCrude, L.P. and SemCanada Crude Company. Additionally, Foxx was the President, Chief Executive Officer and a Director of SGLP. He signed the Registration Statement in connection with the February 20, 2008 unit Offering.   Prior to SemGroup, Foxx was President and operating manager of Foxx Transports, L.L.C., a domestic oil gathering and trading company based in Houston, Texas. He sold the business to SemCrude in April of 2000, and was instrumental in the transition and consolidation of his company's assets to SemCrude.

20.     Defendant Gregory C. Wallace ("Wallace"), co-founded the Parent in April 2000 and serves as the Parent's vice president, chief financial officer and secretary.  He is a director of SGLP.  Wallace signed the Registration Statement with respect to the February Offering.

21.    Defendant Alex Stallings ("Stallings") was, at all relevant times, the Chief Accounting Officer for SGLP.    Defendant Stallings serves as the Parent's chief accounting officer and directs the financial and accounting operations of the Parent company.    Stallings signed the Registration Statement with respect to the February Offering.

22.    Defendant SemGroup Energy Partners G.P. LLC (the "General Partner") is the general partner of SGLP.    It is wholly owned by the Parent, and has the power to and directs the operations of the Company.    Until the end of the Class Period, it was dominated by non-independent directors.

23.    Defendants Foxx, Wallace and Stallings are sometimes referred to as the Individual Defendants.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) (3) on behalf of a Class consisting of all persons who purchased or otherwise acquired the common stock of SGLP from February 20, 2008 through July 17, 2008.    Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which Defendants have or had a controlling interest.

25.    The members of the Class are so numerous that joinder of all members is impracticable.    While the exact number of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, there are approximately 21 million common units of SGLP common stock outstanding, and a

11

substantial number of units were traded during the Class Period.  Plaintiff believes that

there are hundreds, if not thousands, of members of the Class.  Members of the Class

may be identified from records maintained by SGLP, its transfer agent or underwriter

records and may be notified of the pendency of this action by mail, using a form of

notice similar to that customarily used in securities class actions.

26.    Plaintiff's claims are typical of the claims of the other members of the

Class in that the members of the Class have been damaged by the acts of Defendants.

27.    Plaintiff will fairly and adequately protect the interests of the other

members of the Class.  To assist him in that endeavor, Plaintiff has retained counsel

competent and experienced in class and securities litigation.  Plaintiff is not aware of

any interest it holds which is antagonistic to the interests of the Class.

28.    Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the Class.

Among the questions of law and fact common to this Class are:

    a.    Whether the Exchange Act was violated by the Defendants' acts, as
        alleged herein;

    b.    Whether any materially false or misleading statements were made
        and/or whether Defendants omitted material facts necessary to
        make statements made, in light of the circumstances under which
        they were made, not misleading;

    c.    Whether Defendants had a duty to correct prior misstatements or
        omissions; and

    d.    The measure of damages.

29.    A class action is superior to all other available methods for the fair and

efficient adjudication of this controversy since joinder of all members is impracticable.

Furthermore, because the damages suffered by individual Class members may be

relatively small, the expense and burden of individual litigation make it impossible for members of the Class to pursue individual redress for the damages caused to them by Defendants' acts. Plaintiff is not aware of any difficulty that will be presented in managing this action as a class action.

### ADDITIONAL SCIENTER ALLEGATIONS

30. The Individual Defendants and SGLP acted with scienter in that the Individual Defendants and SGLP knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding SGLP, their control over, and/or receipt and/or modification of SGLP's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SGLP, participated in the fraudulent scheme alleged herein.

31. The motive of the Individual Defendants and SGLP was to raise substantial capital in the February Offering to provide cash to the Parent to ease its undisclosed material liquidity problems cause by its risky hedging strategy. In furtherance of this scheme, the Defendants caused SGLP to disseminate the February Prospectus so as to raise approximately $137 million from the investing public, plus borrowed funds, which would be paid to the Parent.

13

## LOSS CAUSATION

32.     During the Class Period, as detailed herein, the Individual Defendants and SGLP engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of SGLP common stock and operated as a fraud or deceit on Class Period purchasers of SGLP common units by failing to disclose the material adverse facts detailed herein, and further by failing to correct and update information which was previously falsely rendered.  When the Defendants' prior misrepresentations and fraudulent conduct were disclosed (first by wide-spread leakage of the materially adverse news) and then by press release, the price of SGLP common units fell precipitously as the prior artificial inflation was dissipated.  As a result of their purchases of SGLP common units during the Class Period, Plaintiff and the other Class members suffered economic loss, i.e., damages, under the federal securities laws.

33.     By failing to disclose the material facts detailed herein, the Individual Defendants and SGLP presented a misleading picture of SGLP business and future prospects.  The Individual Defendants' and SGLP's false and misleading statements had the intended effect and caused SGLP common units to trade at artificially inflated levels throughout the Class Period.

34.     As a direct result of the market leakage and disclosures on or about July 17, 2008, the price of SGLP common units fell precipitously, falling from $22.80 per unit share to $8.30 per unit.

35.     The precipitous decline in the price of SGLP common stock after this disclosure was a direct result of the nature and extent of the Individual Defendants' and SGLP's fraud finally being revealed to investors and the market.  The timing and

14

magnitude of the price decline in SGLP common units stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Individual Defendants' and SGLP's fraudulent conduct. The economic loss, *i.e.,* damages, suffered by Plaintiff and the other Class members was a direct result of the Individual Defendants' and SGLP's fraudulent scheme to artificially inflate the prices of SGLP common stock and the subsequent significant decline in the value of SGLP common stock when the Individual Defendants' and SGLP's prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

36.     As to the claims asserted on behalf of the Class, at all relevant times the market for SGLP common stock was an efficient market for the following reasons, among others:

a.     SGLP common units met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.     as a regulated issuer, SGLP filed periodic public reports with the SEC and the NASD;

c.     SGLP regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.     SGLP was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

15

37.    As a result of the foregoing, the market for SGLP common units promptly digested current information regarding SGLP from all publicly available sources and reflected such information in the prices of the stock.    Under these circumstances, all purchasers of SGLP common units during the Class Period suffered similar injury through their purchase of SGLP common units at artificially inflated prices and a presumption of reliance applies.

## No Safe Harbor

38.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.    Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.    To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.    Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SGLP who knew that those statements were false when made.

## COUNT 1
### (For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against the Individual Defendants and SGLP)

39.     Plaintiff incorporates and realleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, the Individual Defendants and SGLP disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     Thereafter, the Individual Defendants and SGLP failed to update or correct their prior false and misleading statements or omissions thereby continuing to violate the law.

42.     The Individual Defendants and SGLP violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

    a.     Employed devices, schemes, and artifices to defraud;

    b.     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of SGLP common units during the Class Period.

43.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SGLP common stock. Plaintiff and the Class would not have purchased SGLP common stock at the prices

17

they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.  As a direct and proximate result of The Individual Defendants' and SGLP's wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of SGLP common stock during the Class Period.

**COUNT II**
**(For Violation of §20(a) of the Exchange Act**
**Against The General Partner)**

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    The General Partner acted as a controlling person of SGLP within the meaning of §20(a) of the Exchange Act.  By reason of its position as the General Partner of SGLP, it had the power and authority to cause SGLP to engage in the wrongful conduct complained of herein.  By reason of such conduct, the General Partner are liable pursuant to §20(a) of the Exchange Act.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff's counsel as class counsel;

b.    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages

18

sustained as a result of Defendants' wrongdoing, including prejudgment and post-judgment interest thereon;

      c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      d.    Such other and further relief as the Court may deem just and proper.

DATED:  July 22, 2008

FEDERMAN & SHERWOOD

William B. Federman, OBA #2853
Stuart W. Emmons, OBA #12281
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Ph: 405.235.1560
Fax: 405.239.2112
WBF@Federmanlaw.com
SWE@Federmanlaw.com

**ROY JACOBS & ASSOCIATES**
Roy L. Jacobs (RLJ-0286)
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. (212) 867-1156
Fax (212) 504-8343
rjacobs@jacobsclasslaw.com
- and -
**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz (LP-7324)
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel. (212) 685-0969
Fax (212) 685-2306
lpaskowitz@pasklaw.com

*ATTORNEYS FOR PLAINTIFF*

I:\Pending\SemGroup\Pleadings\Complaint-Securities-Final.doc

## PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint of SemGroup Energy Partners, L.P. ("SGLP") and certain other defendants.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

5. Plaintiff made the following transactions during the Class Period (February 20, 2008 through July 17, 2008) in the common units of SGLP:

**Purchases**

| Date(s) | Number of Shares | Price |
|---------|------------------|-------|
| 05/07/2008 | 100 | 25.00 |
| | | |
| | | |
| | | |
| | | |
| | | |

**Sales**

| Date(s) | Number of Shares | Price |
|---------|------------------|-------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

6. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

7. I declare under penalty of perjury, this _21___ day of July 2008 that the information above is accurate.

Craig Carson_____
                    E-signed

**C**

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:08-cv-06477-PAC

Poelman v. Semgroup Energy Partners, L.P. et al
Assigned to: Judge Paul A. Crotty
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 07/21/2008
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

**Plaintiff**

**Erik M. Poelman**
*On behalf of himself and all others similarly
situated*

represented by **Laurence Paskowitz**
Paskowitz & Associates
60 East 42nd Street
46th Floor
New York, NY 10165
(212) 685-0969
Fax: (212) 685-2306
Email: classattorney@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roy Laurence Jacobs**
Roy Jacobs & Associates
60 East 42nd Street
46th Floor
New York, NY 10165
(212) 867-1156
Fax: (212) 504-8343
Email: rljacobs@pipeline.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Semgroup Energy Partners, L.P.**

**Defendant**

**Semgroup Energy Partners G. P. LLC**

**Defendant**

**Kevin L. Foxx**

**Defendant**

**Gregory C. Wallace**

**Defendant**

**Alex Stallings**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/21/2008 | 1 | COMPLAINT against Semgroup Energy Partners, L.P., Semgroup Energy Partners G. P. LLC, Kevin L. Foxx, Gregory C. Wallace, Alex Stallings. (Filing Fee $ 350.00, Receipt Number 657227)Document filed by Erik M. Poelman.(mbe) (Entered: 07/23/2008) |
| 07/21/2008 | | SUMMONS ISSUED as to Semgroup Energy Partners, L.P., Semgroup Energy Partners G. P. LLC, Kevin L. Foxx, Gregory C. Wallace, Alex Stallings. (mbe) (Entered: 07/23/2008) |
| 07/21/2008 | | Magistrate Judge Ronald L. Ellis is so designated. (mbe) (Entered: 07/23/2008) |
| 07/21/2008 | | Case Designated ECF. (mbe) (Entered: 07/23/2008) |
| 07/21/2008 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Erik M. Poelman.(mbe) (Entered: 07/23/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/29/2008 12:18:17 | | |
| **PACER Login:** | db0535 | **Client Code:** | semgroup |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cv-06477-PAC |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ERIK A. M. POELMAN, On Behalf of Himself      C.A. No.
and All Others Similarly Situated,

                  Plaintiff,      CLASS ACTION
     vs.                         COMPLAINT FOR
                                  VIOLATION OF THE
                                  FEDERAL SECURITIES
SEMGROUP ENERGY PARTNERS, L.P.,    LAWS
SEMGROUP ENERGY PARTNERS G. P. LLC,
KEVIN L. FOXX, GREGORY C. WALLACE,    JURY TRIAL DEMANDED
and ALEX STALLINGS,

                  Defendants.
-------------------------------------------------------------X

     Plaintiff, individually and on behalf of all others similarly situated, by his attorneys,

alleges the following based on the investigation of his counsel, except as to allegations

specifically pertaining to plaintiff and his counsel, which are based on personal knowledge. The

investigation of counsel is predicated on, among other things, a review of public filings by

SemGroup Energy Partners, L.P. ("SGLP" or the "Company") with the United States Securities

and Exchange Commission ("SEC"), press releases issued by the Company, statements made by

Company executives during public telephone conferences, media reports about the Company,

and publicly available trading data relating to the price and volume of SGLP common units.

## SUMMARY OF THE ACTION AND FACTUAL BACKGROUND

    1.     This is a securities class action on behalf of all purchasers of the common units of

SGLP between February 20, 2008 and July 17, 2008 (the "Class Period") for violations of the

Securities Exchange Act of 1934 (the "Exchange Act").

    2.     SGLP a public limited partnership is run by its general partner SemGroup G.P.

LLC (the "General Partner") a wholly owned subsidiary of SemGroup L.P. (the "Parent"). The

Parent is a private company with significant operations in the oil business. In 2007 SGLP was partially spun off via a public offering, with the Parent retaining a 49% interest. A number of the directors and officers of the General Partner are officers of the Parent. As an entity in the oil business, the Parent was a party to a number of hedge transactions related to the price of crude oil. Hedging the price of crude oil has become a difficult endeavor, since the price is marked by large swings in value and high volatility. Betting wrong on which way prices are going can leave a hedging party in huge financial difficulty.

     3.    In the last several years the price of crude oil has rocketed, with the potential for large dips:

     a.    In the fall of 2007 oil prices rose to an all-time high of $80 per barrel;

     b.    On October 19, 2007, U.S. light crude rose to a new high of $90.02 per barrel. Prices fell briefly then rose again rapidly to a peak of $92.22 on October 26, 2007;

     c.    Prices increased throughout late October and early November. On November 7, 2007 light crude oil reached another record, closing at $98.10 per barrel. On November 21, 2007, oil prices rose to a new high of $99.29 per barrel;

     d.    On January 2, 2008, U.S. light crude surpassed the psychological barrier of $100 before falling to $99.69;

     e.    The price of oil once again rose to $100.10 a barrel on February 19, 2008. Oil prices rose above $101 a barrel February 27, 2008. Oil prices surpassed $103 a barrel February 29, 2008;

     f.    Oil prices continued to rise to $104 on March 3, 2008. Oil hit $111 a barrel, on March 13, 2008, before sliding back to below $110. The record was again broken on March 17, 2008, with U.S. light sweet crude reaching $111.80. On April 15, 2008 the price of

2

oil broke the $114 mark for the first time.  The price increased to $115.07/barrel on April 16, 2008, and increased again to $117 per barrel on April 18, 2008.  Oil prices rose to a new high of $119.90 a barrel on April 22, 2008, before dipping and then rising $3 on April 25, 2008 to $119.10;

g.  On May 9, 2008, the oil price exceeded $125 per barrel for the first time;

h.  On June 28, crude hit a record of $142.99.  Oil rose on July 1 to a record $143.67;

i.  On July 3 London Brent crude reached a record of $145.75 a barrel.  On July 11, Oil hit another record of $US147.00 a barrel;

j.  On July 15, a selloff began resulting in an $8 drop.  By the end of that week, crude oil had fallen by 11% to $128.

4.  During early 2008 the Parent was caught up in oil hedging transactions which were very risky.  The Parent bet wrong on these hedges and began to suffer margin calls which it had trouble meeting, and had to cover transactions that had declined, and which began to severely impact its business and cause liquidity problems.  Rather than disclose its difficulties at the start of the Class Period, when SGLP made a large secondary offering of common stock which yielded approximately $137 million proceeds (the "Offering"),  the defendants used the Offering as a vehicle to provide much needed cash to the Parent through the sale to SGLP of the Parent's liquid asphalt cement business.  While the Parent was described in very positive terms in the Offering, in fact it was in financial trouble and/or was teetering on the brink of disaster if oil prices rose further, which was not revealed.  By discussing the positive benefits of the relationship between SGLP and the Parent at length in the Offering and in subsequent filings

3

with the SEC, defendants had an on-going affirmative duty to disclose material negative information about the Parent to the investing public.

5.      SGLP provides terminalling, storage, gathering, and transportation services for companies engaged in the production, distribution, and marketing of crude oil.  It owns and operates an aggregate of approximately 6.7 million barrels of storage capacity.  These oil related assets were contributed to the Company by the Parent in connection with the Company's initial public offering in July 2007.  The Company also owns and operates 46 liquid asphalt cement terminals, which provide liquid asphalt cement terminalling and storage services in the markets of continental United States.  The Company is based in Tulsa, Oklahoma.  SGLP is a subsidiary of the Parent.

6.      As noted above, on or about February 20, 2008 the Company effected the Offering, which involved the sale of 6 million common units at $23.90 per unit for proceeds of $137 million.  The purpose of the Offering was to permit the Company to raise funds to acquire the Parent's asphalt business for $378.5 million.  In addition to using the proceeds from the Offering, the Company revealed that it would borrow an additional $241 million to complete the acquisition.  The Prospectus described the throughput agreement which had been previously entered into with respect to the Company's ownership and operation of the Parent's crude oil gathering business which had been conveyed to the Company in connection with the Company's initial public offering.  Pursuant to the throughput agreement the Parent had obligated itself to make significant payments to the Company for services rendered by the Company to the Parent in gathering crude oil for delivery to refiners, pipelines or storage facilities.  The throughput agreement is a very materially beneficial contract to the Company, and provides the Company with significant revenue.  Anything which would put that agreement in jeopardy would be highly

material.  In connection with the acquisition of the asphalt business, the Company entered into a terminalling agreement with the parent which was to provide substantial revenues to the Company in connection with the Company's operation of the asphalt business.  Anything which would put that agreement in jeopardy would be highly material.  In addition there was extensive discussion about the Company's interaction with the Parent and its effects on the Company's business and prospects.  The Company is dependant on the Parent for labor, since the Company has few employees.  The Prospectus disclosed that the Parent intended to use the proceeds received by it from the sale of the asphalt business to pay down its indebtedness.  There was extensive discussion in the Prospectus concerning the Company's relationship with the Parent and the impact of that relationship on the Company's business.  (February 13, 2008 Prospectus pp. 52-56; 69-80)  At no time however did the Prospectus reveal that the Parent was suffering from liquidity problems, or that it was engaged highly risky crude oil hedge transactions which could affect its ability to continue as a going concern should oil prices further increase.  Anything which was materially negative concerning the Parent would be material to the Company.

7.      Thereafter, on March 6, 2008, the Company filed its Annual Report on Form 10-K for the year ending December 31, 2007.  While the report extolled the virtues of the relationship with the Parent, there was no revelation that the Parent was in serious financial trouble, or had invested in highly risky crude oil hedges which put the Company's future in serious jeopardy.  Thus, Defendants did not correct the misstatements and omissions contained in the Prospectus with respect to the February Offering.  The Report was signed by defendants, the General Partner, Foxx, Stallings and Wallace.

8.      On May 8, 2008, the Company filed its Quarterly Report on Form 10-Q for the quarter ending March 31, 2008.  While the Report discussed the extensive business relationship between the Company and the Parent, there was no revelation that the Parent was in serious financial trouble, or had invested in highly risky hedges which put the Company's future in serious jeopardy.  Thus, Defendants did not correct the misstatements and omissions contained in the Prospectus with respect to the February Offering.  The Report was signed by Defendants, the General Partner and Stallings.

9.      In the period post the Offering, SGLP units traded in the $24-27 range reflecting that, as far as the investing public was aware, the Company was operating according to its business plan.  However, by July 11, 2008, SGLP unit values began to decline on increased trading volume, despite the release of no adverse news.  Then on July 17, 2007 SGLP unit price decline 50% to $11.00 on greatly increased volume of 5.7 million units, as a result of leakage of the material adverse news which had been withheld by Defendants.  As a result of the widespread leakage, the defendants were finally forced to issue a statement which they did after the market closed on July 17, 2008, and which stated in relevant part:

> TULSA, Okla.--(BUSINESS WIRE)--SemGroup Energy Partners, L.P. (NASDAQ: SGLP), has been informed by SemGroup, L.P., SGLP's parent, that SemGroup, L.P. is experiencing liquidity issues and is exploring various alternatives, including raising additional equity, debt capital or the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.
> Kevin Foxx, SemGroup Energy Partners' President and Chief Executive Officer, stated that,
>
> "While SGLP's parent is experiencing liquidity challenges, SGLP's assets provide important terminalling and storage services to the energy industry.  We own valuable assets in strategic locations and remain positioned to provide midstream services.  Until our parent advises us of their course of action, we cannot fully evaluate and are not yet prepared to comment on how any such action taken by our parent might affect SGLP."

SGLP derives a substantial majority of its revenues pursuant to a Throughput Agreement and a Terminalling and Storage Agreement with SemGroup, L.P. and its subsidiaries. In addition, SGLP has entered into an Amended and Restated Omnibus Agreement and other agreements with SemGroup, L.P. that address, among other things, the provision of general and administrative and operating services to SGLP.

10.     SGLP units declined materially on July 18, 2008 dropping from $11.00 to $8.30 on materially increased volume of 9.8 million units. Thus in two days, SGLP units had dropped over 63% in value, wiping out over $300 million of in the public unitholders' equity.

11.     Various analysts discussed the fallout from this announcement as reported by MarketWatch on July 18, 2008 in an article entitled "Analysts cite possible problems at SemGroup LP tied to high oil prices:

NEW YORK (MarketWatch) -- SemGroup Energy Partners L.P. said its corporate parent is considering filing for bankruptcy, casting doubts over one of its key revenue sources just one year after the oil-pipeline owner went public along with a crop of other energy partnerships.

SGLP fell 25% to close at $8.30 as one of the biggest decliners Friday on the Nasdaq, following a 50% drop in the previous session on downgrades by debt rating agencies.

Analysts raised the possibility that SemGroup LP -- the privately held parent of the public Energy Partners unit - may be falling victim to higher oil prices.

"While SemGroup has been running an operationally sound business with attractive regional business niches and adequate hedged margins, in Moody's view the over 50% rise in sector oil prices since March 31 is likely to have pressured its liquidity position," Moody's analyst Andrew Oram said in a note on Thursday. "Highly volatile hydrocarbon prices would have been challenging to its hedged trading business."

Dan Pickering of Tudor Pickering Holt told Dow Jones Newswires that SemGroup LP wrongly bet on crude price to go down earlier this year.

*"As crude went up, they were forced to cover, and so added additional buying power to the market," he said. "In other words, the higher crude went, the more money they lost."*

7

Moody's Andrew Oram said he anticipates much higher funding needs for hydrocarbon inventories and accounts receivables and the posting of much higher cash margin deposits given that the rapid pace of price increase would yield market prices that exceed the prices of existing exchange traded hedges.

SemGroup L.P. owns a 40% limited partner interest and a 2% general partner interest in SemGroup Energy Partners.

Fitch Ratings cut its view on about $2.6 billion in debt held by SemGroup LP, SemCrude LP and SemCAMS Midstream Co.  The downgrade came amid an 11% slide in crude prices this week, before futures regained their footing Friday.

The Tulsa, Okla. owner of petroleum storage and transportation assets said late Thursday SemGroup L.P. is exploring various alternatives to bankruptcy protection, including raising additional equity, seeking debt capital or filing a voluntary petition for reorganization.

On Friday, Terry Ronan was named SemGroup, L.P. president and chief executive officer.

Kevin Foxx remains president and chief executive officer of SemGroup Energy Partners, L.P.

12.    The Fitch Ratings Agency issued a downgrade of SemGroup LP and several of its

related entities and placed the company on Rating Watch stating:

Approximately $2.6 billion of debt is affected by these actions.  The downgrades and Watch Negative status reflect liquidity pressures related to the sustained elevated level of crude oil prices and SemGroup's ability to continue its marketing and storage businesses in the current price environment.

Spot prices for WTI crude at Cushing, OK have increased by as much as 43% since April 1, 2008.  SemGroup hedges a large percentage of its inventories and would be required to post additional margin to increase the collateral support for its hedging program.  Specifically, Fitch is concerned that the company may not have sufficient available capacity from its bank facilities to meet requests for additional margin.

SemGroup is a privately held midstream energy partnership focused primarily on providing gathering, transportation, processing, and marketing services for crude oil and refined products in the U.S. Midcontinent region and Canada. Additionally, through its SemMaterials subsidiary, SemGroup stores, transport and markets asphalt and asphalt products in the United States and Mexico.  The company is currently owned by management and various private equity investors,

including Ritchie Capital Management and Carlyle/Riverstone Global Energy and Power Fund II."

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j (b) and 78t (a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction exists pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

14.     Venue is proper in this District because many of the wrongful acts alleged herein took place or originated in this District.

15.     Defendants used the instrumentalities of interstate commerce, the U.S. mails and the facilities of the national securities markets in connection with the wrongful activity alleged herein.

## PARTIES

16.     Plaintiff purchased SGLP common units during the Class Period as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

17.     Defendant SGLP is a Delaware limited partnership. SGLP common units trade on the NASDAQ under the symbol "SGLP."

18.     Defendant Kevin L. Foxx ("Foxx") co-founded the Parent in April 2000 and is the Parent's executive vice president and chief operating officer. He also serves as executive vice president and chief operating officer of SemCrude, L.P. and SemCanada Crude Company. Additionally, Foxx is the president, chief executive officer and a director of SGLP. He signed the Registration Statement in connection with the February 20, 2008 unit Offering. Prior to SemGroup, Foxx was president and operating manager of Foxx Transports, L.L.C., a domestic oil gathering and trading company based in Houston, Texas. He sold the business to SemCrude

in April 2000 and was instrumental in the transition and consolidation of his company's assets to SemCrude.

19.    Defendant Gregory C. Wallace ("Wallace"), co-founded the Parent in April 2000 and serves as the Parent's vice president, chief financial officer and secretary.  He is a director of SGLP.  Wallace signed the Registration Statement with respect to the February Offering.

20.    Defendant Alex Stallings ("Stallings") was, at all relevant times, the Chief Accounting Officer for SGLP.  Defendant Stallings serves as the Parent's chief accounting officer and directs the financial and accounting operations of the Parent company.  Stallings signed the Registration Statement with respect to the February Offering.

21.    Defendant SemGroup Energy Partners G.P. LLC (the "General Partner") is the general partner of SGLP.  It is wholly owned by the Parent, and has the power to and directs the operations of the Company.   Until the end of the Class Period, it was dominated by non-independent directors.

22.    Defendants Foxx, Wallace and Stallings are sometimes referred to as the Individual Defendants.

**CLASS ACTION ALLEGATIONS**

23.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) (3) on behalf of a Class consisting of all persons who purchased or otherwise acquired the common stock of SGLP from February 20, 2008 through July 17, 2008.  Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the members of the Class is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, there are approximately 21 million common units of SGLP common stock outstanding, and a substantial number of units were traded during the Class Period.  Plaintiff believes that there are hundreds, if not thousands, of members of the Class.  Members of the Class may be identified from records maintained by SGLP, its transfer agent or underwriter records and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

25.    Plaintiff's claims are typical of the claims of the other members of the Class in that the members of the Class have been damaged by the acts of defendants.

26.    Plaintiff will fairly and adequately protect the interests of the other members of the Class.  To assist him in that endeavor, plaintiff has retained counsel competent and experienced in class and securities litigation.  Plaintiff is not aware of any interest it holds which is antagonistic to the interests of the Class.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to this Class are:

a.    Whether the Exchange Act was violated by the defendants' acts, as alleged herein;

b.    Whether any materially false or misleading statements were made and/or whether defendants omitted material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading;

        c.      Whether defendants had a duty to correct prior misstatements or omissions

and

        d.      The measure of damages.

      28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to pursue individual redress for the damages caused to them by defendants' acts.  Plaintiff is not aware of any difficulty that will be presented in managing this action as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

      29.    The Individual Defendants and SGLP acted with scienter in that the Individual Defendants and SGLP knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding SGLP, their control over, and/or receipt and/or modification of SGLP's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SGLP, participated in the fraudulent scheme alleged herein.

      30.    The motive of the Individual Defendants and SGLP was to raise substantial capital in the February Offering to provide cash to the Parent to ease its undisclosed material

liquidity problems cause by its risky hedging strategy.  In furtherance of this scheme, the Defendants caused SGLP to disseminate the February Prospectus so as to raise approximately $137 million from the investing public, plus borrowed funds, which would be paid to the Parent.

<u>**LOSS CAUSATION**</u>

31.    During the Class Period, as detailed herein, the Individual Defendants and SGLP engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of SGLP common stock and operated as a fraud or deceit on Class Period purchasers of SGLP common units by failing to disclose the material adverse facts detailed herein, and further by failing to correct and update information which was previously falsely rendered.  When the Defendants' prior misrepresentations and fraudulent conduct were disclosed (first by wide-spread leakage of the materially adverse news) and then by press release, the price of SGLP common units fell precipitously as the prior artificial inflation was dissipated.  As a result of their purchases of SGLP common units during the Class Period, Plaintiff and the other Class members suffered economic loss, i.e., damages, under the federal securities laws.

32.    By failing to disclose the material facts detailed herein, the Individual Defendants and SGLP presented a misleading picture of SGLP business and future prospects.  The Individual Defendants' and SGLP's false and misleading statements had the intended effect and caused SGLP common units to trade at artificially inflated levels throughout the Class Period.

33.    As a direct result of the market leakage and disclosures on or about July 17, 2008, the price of SGLP common units fell precipitously, falling from $22.80 per unit share to $8.30 per unit.

34.    The precipitous decline in the price of SGLP common stock after this disclosure was a direct result of the nature and extent of the Individual Defendants' and SGLP's fraud

finally being revealed to investors and the market.  The timing and magnitude of the price decline in SGLP common units stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Individual Defendants' and SGLP's fraudulent conduct.  The economic loss, *i.e.,* damages, suffered by Plaintiff and the other Class members was a direct result of the Individual Defendants' and SGLP's fraudulent scheme to artificially inflate the prices of SGLP common stock and the subsequent significant decline in the value of SGLP common stock when the Individual Defendants' and SGLP's prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance: Fraud on the Market Doctrine

35.     As to the claims asserted on behalf of the Class, at all relevant times the market for SGLP common stock was an efficient market for the following reasons, among others:

a.     SGLP common units met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.     as a regulated issuer, SGLP filed periodic public reports with the SEC and the NASD;

c.     SGLP regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d.     SGLP was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

36.    As a result of the foregoing, the market for SGLP common units promptly digested current information regarding SGLP from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of SGLP common units during the Class Period suffered similar injury through their purchase of SGLP common units at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

37.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SGLP who knew that those statements were false when made.

### COUNT 1
### (For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against the Individual Defendants and SGLP)

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     During the Class Period, the Individual Defendants and SGLP disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     Thereafter, the Individual Defendants and SGLP failed to update or correct their prior false and misleading statements or omissions thereby continuing to violate the law.

41.     The Individual Defendants and SGLP violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

      a.     Employed devices, schemes, and artifices to defraud;

      b.     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of SGLP common units during the Class Period.

42.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for SGLP common stock.  Plaintiff and the Class would not have purchased SGLP common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.  As a direct and proximate result of The Individual Defendants' and

SGLP's wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of SGLP common stock during the Class Period.

**COUNT II**
**(For Violation of §20(a) of the Exchange Act**
**Against The General Partner)**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     The General Partner acted as a controlling person of SGLP within the meaning of §20(a) of the Exchange Act.  By reason of its position as the General Partner of SGLP, it had the power and authority to cause SGLP to engage in the wrongful conduct complained of herein.  By reason of such conduct, the General Partner are liable pursuant to §20(a) of the Exchange Act.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying plaintiff's counsel as class counsel;

b.     Awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, including prejudgment and post-judgment interest thereon;

c.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Such other and further relief as the Court may deem just and proper.

ECF, REFERRED

## U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:08-cv-06598-UA

Charles D. Maurer Simp Profit Sharing Plan v. Semgroup Energy Partners, L.P. et al
Assigned to: Judge Unassigned
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 07/24/2008
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

**Plaintiff**

**Charles D. Maurer Simp Profit Sharing Plan**
*on Behalf of Itself and all others Similarly Situated*
*for the benefit of*
Charles D. Maurer

represented by **Natalie Marie MacKiel**
Wolf Popper LLP
845 Third Avenue
New York, NY 10022
(212) 451-9667
Fax: (212) 486-2093
Email: nmackiel@wolfpopper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Craig Finkel**
Wolf Popper LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600
Email: rfinkel@wolfpopper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Semgroup Energy Partners, L.P.**

**Defendant**

**Semgroup Energy Partners G.P. LLC**

**Defendant**

**Kevin L. Foxx**

**Defendant**

**Gregory C. Wallace**

**Defendant**

**Alex Stallings**

**Defendant**

**Citigroup Global Markets Inc.**



**Defendant**

**Lehman Brothers, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2008 | 1 | COMPLAINT against Citigroup Global Markets Inc., Lehman Brothers, Inc., Semgroup Energy Partners, L.P., Semgroup Energy Partners G.P. LLC, Kevin L. Foxx, Gregory C. Wallace, Alex Stallings. (Filing Fee $ 350.00, Receipt Number 657627)Document filed by Charles D. Maurer Simp Profit Sharing Plan.(mbe) (Entered: 07/30/2008) |
| 07/24/2008 | | SUMMONS ISSUED as to Citigroup Global Markets Inc., Lehman Brothers, Inc., Semgroup Energy Partners, L.P., Semgroup Energy Partners G.P. LLC, Kevin L. Foxx, Gregory C. Wallace, Alex Stallings. (mbe) (Entered: 07/30/2008) |
| 07/24/2008 | | CASE REFERRED TO Judge Paul A. Crotty as possibly related to 1:08-cv-6477. (mbe) (Entered: 07/30/2008) |
| 07/24/2008 | | Case Designated ECF. (mbe) (Entered: 07/30/2008) |
| 07/24/2008 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Charles D. Maurer Simp Profit Sharing Plan.(mbe) (Entered: 07/30/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/31/2008 10:54:09 | | | |
| PACER Login: | db0535 | Client Code: | semgroup |
| Description: | Docket Report | Search Criteria: | 1:08-cv-06598-UA |
| Billable Pages: | 1 | Cost: | 0.08 |

08  CV  6598

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHARLES D. MAURER SIMP PROFIT
SHARING PLAN F/B/O CHARLES D.
MAURER, on Behalf of Itself and All Others
Similarly Situated,

                        Plaintiff,

        vs.

SEMGROUP ENERGY PARTNERS, L.P.,
SEMGROUP ENERGY PARTNERS G.P. LLC,
KEVIN L. FOXX, GREGORY C. WALLACE,
ALEX STALLINGS, CITIGROUP GLOBAL
MARKETS INC. and LEHMAN BROTHERS,
INC.

                        Defendants.

No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

RECEIVED
JUL 2 4 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, individually and on behalf of all others similarly situated, by its attorneys,
alleges the following upon information and belief, except for those allegations as to itself, which
are alleged upon personal knowledge.  Plaintiff's information and belief is based on the
investigation of its counsel, including a review of SemGroup Energy Partners, L.P.'s publicly
issued press releases; filings with the Securities and Exchange Commission ("SEC"), including
the Amendment No. 1 to Registration Statement and Prospectus filed with the SEC on February
12, 2008; news stories; analysts' reports concerning SemGroup Energy Partners, L.P. and its
affiliates; and data concerning trades in SemGroup Energy Partners L.P.'s securities.

## NATURE OF THE ACTION

1.      Plaintiff brings this action as a class action on behalf of itself and all other
persons or entities who purchased units of SemGroup Energy Partners, L.P. pursuant to or

Doc. 161196

traceable to the Registration Statement and Prospectus to recover damages caused by defendants' violation of the federal securities laws.

## JURISDICTION AND VENUE

2.      This action arises under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k,

3.      Jurisdiction is conferred upon this Court by Section 22 of the Securities Act, 15 U.S.C. § 77v and 28 U.S.C. § 1331 (federal question jurisdiction).  This Court has personal jurisdiction of the defendants pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

4.      Venue is proper in this District because many of the acts and transactions constituting the violations of law herein complained of occurred within this District, including the preparation and dissemination of the materially false and misleading Registration Statement and Prospectus.  This action is based on many of the same facts as an action previously filed in this District (*Poelman v. SemGroup Energy Partners, L.P., et al.*, 08 CV 6477 (PAC)).

5.      In connection with the acts alleged herein, the defendants directly or indirectly used the means and instrumentalities of interstate commerce, including the United States mails and facilities of a national securities exchange.

## SUMMARY OF ALLEGATIONS

6.      This action asserts securities claims relating to a materially false and misleading Prospectus disseminated in connection with SemGroup Energy Partners, L.P.'s February 13, 2008 secondary offering of six million partnership units.

7.      SemGroup Energy Partners, L.P.'s operations were heavily dependent on the operations of its Parent (SemGroup, L.P.).  Among other things, SemGroup Energy Partners derived approximately 80% of its cash flow from its Parent.

8.     The Prospectus misrepresented the financial strength of the Parent (SemGroup, L.P.) and failed to disclose that the Parent had engaged in risky hedging strategies that presented a material risk of default and bankruptcy.  Inasmuch as SemGroup Energy Partners' business operations were heavily dependent on and intertwined with its Parent's operations, the true facts concerning the Parent's financial condition was material to a reasonable investor's decision to purchase units on the secondary offering.

9.     Those true facts were first disclosed to investors on Thursday, July 17, 2008, when it was revealed that because of its hedging strategies the Parent was at risk of filing for bankruptcy.  The Parent and affiliated companies subsequently filed for bankruptcy on Monday, July 21, 2008.

10.     As a result of the July 17, 2008 disclosures and subsequent bankruptcy filing, SemGroup Energy Partners' units, which closed on Wednesday, July 16, 2008 at $22.80 per unit, plummeted to close on Wednesday, July 23, 2008 at $8.00 per unit.

11.     Documents filed on behalf of the Parent in Bankruptcy Court revealed that SemGroup began experiencing financial distress in 2007 and early 2008, prior to the secondary offering.  The Prospectus failed to reveal that the Parent was suffering from liquidity problems, or that it was engaged in highly risky crude oil hedge transactions that affected its ability to continue as a going concern.

**PARTIES**

12.     Plaintiff Charles. D. Maurer SIMP Profit Sharing Plan f/b/o/ Charles D. Maurer purchased units of SemGroup Energy Partners, L.P. on the February 13, 2008 secondary offering at $23.90 per unit.

13.     Defendant SemGroup Energy Partners, L.P. is a Delaware limited partnership formed in 2007.  SemGroup Energy Partners is based in Tulsa, Oklahoma.  SemGroup Energy Partners owns and operates a diversified portfolio of midstream energy assets, including storage facilities, terminals and pipelines in the United States.  SemGroup Energy Partners provides fundamental midstream services, including the gathering, transportation, terminalling and storing of energy commodities.  SemGroup Energy Partners is a publicly traded master limited partnership.  SemGroup Energy Partners' units are traded on the NASDAQ under ths symbol SGLP.

14.     Defendant SemGroup Energy Partners, G.P. LLC is the General Partner of SemGroup Energy Partners.  The Parent is the 100% owner of the General Partner and shares the same senior management with the General Partner.  The General Partner, by its officers and directors, signed the Registration Statement on behalf of SemGroup Energy Partners.  The General Partner is named as a defendant as a signatory of the Registration Statement.

15.     Defendant Citigroup Global Markets Inc. ("Citigroup") was a co-lead underwriter of SemGroup Energy Partners' February 13, 2008 six million share secondary offering.  Citigroup is named as a defendant as an underwriter of the Offering.

16.     Defendant Lehman Brothers Inc. ("Lehman") was a co-lead underwriter of SemGroup Energy Partners' February 13, 2008 six million share secondary offering.  Lehman is named as a defendant as an underwriter of the Offering.

17.     Defendant Kevin L. Foxx co-founded the Parent.  Kevin Foxx signed the Registration Statement as the General Partner's President, Chief Executive Officer and a Director.  Foxx as also served as the Parent's Chief Operating Officer and Executive Vice

President and as a member of the Parent's Management Committee.

18.    Defendant Gregory D. Wallace has served since 2007, and signed the Registration Statement, as a director of the General Partner.  Wallace has also served as Chief Financial Officer, Vice President and Security of the Parent since 2000.

19.    Defendant Alex G. Stallings has served as Chief Accounting Officer of the General Partner since February 2007 and the Parent's Chief Accounting Officer since September 2002.  Stallings signed the Registration Statement as the General Partner's Chief Accounting Officer.

20.    The defendants identified in paragraphs 17-19 are referred to herein as "Individual Defendants."

21.    The Individual Defendants each signed the Registration Statement for the Offering, which was materially false and misleading.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), on behalf of all persons or entities who purchased units of SemGroup Energy Partners pursuant to or traceable to the February 12, 2008 Registration Statement and Prospectus and were damaged thereby.  Excluded from the Class are the defendants herein, officers and directors of SemGroup Energy Partners, the Parent, the General Partner, or other controlling persons or affiliates of SemGroup Energy Partners, the Underwriters, and members of the immediate family of each of the Individual Defendants.

23.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and

can only be ascertained through appropriate discovery, plaintiff believes there are hundreds of members of the Class. There are approximately 21,275,000 units of SemGroup Energy Partners currently outstanding.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws; it is a member of the Class; its claims are typical of the claims of all Class members; and it does not have interests antagonistic to, or in conflict with, those of the Class.

25.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the Court system and could create the possibility of inconsistent judgments. Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

26.     There are numerous questions of law and fact which are common to the Class and which predominate over any questions affecting individual members of the Class, including:

i.      whether the federal securities laws were violated by defendants' acts as alleged herein;

ii.     whether the Registration Statement and Prospectus omitted to state or misrepresented material facts concerning the Parent's financial condition; and

iii.    whether members of the class were damaged by virtue of their investments in SemGroup Energy Partners' securities, and if so, the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

### Background

27.     SemGroup Energy Partners, L.P. was formed in 2007 by the Parent.  SemGroup Energy Partners completed its initial public offering of twelve million common units on July 17, 2007 at $22.00 per unit.

28.     In connection with that initial public offering, SemGroup Energy Partners entered into a Throughput Agreement with its Parent, requiring SemGroup Energy Partners to provide crude oil gathering, transportation, terminalling and storage services for its Parent.  The Parent was obligated to pay SemGroup Energy Partners a fee based on the number of barrels of crude oil gathered, transported, terminalled or stored on behalf of the Parent.  The Parent was committed to use SemGroup Energy Partners' services at a level that provided SemGroup Energy Partners with minimum monthly fees totaling $76.1 million annually.

### SemGroup, L.P. Experiences Financial Difficulties In Its Hedging Operations

29.     According to a Declaration filed on behalf of the Parent in subsequent bankruptcy proceedings, beginning in approximately July 2006 petroleum product prices began experiencing unusual price volatility.  Albeit undisclosed to investors, the Parent's hedging strategies began to fail.  For example, during the three months ended March 31, 2008, the Parent posted $1.96 billion to satisfy margin deposit requirements, a 115% increase over the three months ended March 31, 2007.

30.     During the twelve months ended December 31, 2007, the Parent and its affiliates posted $1.70 billion to satisfy margin deposit requirements, a 159% increase over the twelve months ended December 31, 2006.

## SemGroup Energy Partners Conducts a Secondary
## Stock Offering to Improve the Parent's Liquidity

31.     On January 14, 2008, in a press release issued after the close of the markets,

SemMaterials, L.P., a subsidiary of the Parent, announced that it had agreed to sell 46 U.S. liquid

asphalt cement and residual fuel oil terminalling and storage facilities to SemGroup Energy

Partners. L.P. for $378.8 million.

32.     Pursuant to a Terminalling Agreement executed between the Parent and

SemGroup Energy Partners in connection with the sale of the facilities, the Parent increased its

minimum annual obligations to SemGroup Energy Partners by $58.9 million.

33.     On January 18, 2008, after the close of trading, Energy Partners announced that it

had filed a Registration Statement for a public offering of six million of its common units to raise

money to consummate that transaction.

## The Registration Statement Fails to Disclose the Parent's Adverse Financial
## Condition and the Risk to Investors From the Parent's Hedging Strategies

34.     On February 12, 2008, Semgroup Energy Partners filed an Amendment No. 1 to

S-1 Registration Statement and Prospectus with the SEC for the sale of six million units of

SemGroup Partners at $23.90 per unit.

35.     The Registration Statement informed investors of SemGroup Energy Partners'

dependency on the Parent.  Among other things, the Registration Statement stated that:

> We depend upon SemGroup, L.P for substantially all of our revenues, and any
> reduction in these revenues would have a material adverse effect on our results of
> operations and our ability to make distributions to our unitholders.

36.     In light of SemGroup Energy Partners' dependency on the Parent, defendants were

obligated to disclose in the Registration Statement that the Parent's hedging strategy had begun

to fail and that it was in need of additional cash to post as collateral for its trading positions.

37.     The Registration Statement was silent as to the Parent's hedging strategy and need for additional cash to post as collateral.

38.     SemGroup Energy Partners is managed by its General Partner, SemGroup Energy Partners G.P., L.L.C.  All of the executive officers and some of the directors of the General Partner also serve as executive officers or directors of the Parent.  Thus, SemGroup Energy Partners, through its General Partner, had the same knowledge of the Parent's business operations (and adverse hedging strategy) as the Parent itself.

39.     On February 20, 2008, after the close of trading, SemGroup Energy Partners issued a press release stating that it had "completed its pending announced acquisition of 46 U.S. liquid asphalt cement and residual fuel oil terminalling and storage facilities from SemMaterials, L.P. for $378.8 million."  SemGroup Energy Partners borrowed $241.2 million, in addition to the net proceeds from the secondary offering, to close the acquisition of the Parent's facilities.

**The Revelation of the True Facts**

40.     The true facts were first revealed to the market on Thursday, July 17, 2008.  On July 17, 2008 SemGroup Energy Partners lost 52 percent of its market value, falling $11.80 to $11.00 per unit.  After the close of the market, SemGroup Energy Partners issued a statement saying that its Parent "is experiencing liquidity issues" and is considering alternatives, including "a voluntary petition for reorganization under Chapter 11."  SemGroup Energy Partners confirmed on that announcement that it generated a "substantial majority" of its revenue from the Parent.  In fact, it was reported on <u>Bloomberg News</u> that "about 80% of [SemGroup Energy Partners'] cash flows via throughput and terminal agreements" derived from its Parent.

Doc. 161196                                          - 9 -

41.     On Monday, July 21, 2008, the Parent and two dozen of its affiliates filed

bankruptcy petitions in the U.S. Bankruptcy Court in Wilmington, Delaware.

42.     Information revealed in the Declaration of Terrence Ronan, a Senior Vice

President, Finance of the Parent, filed in the bankruptcy matter of In re SemCrude, L.P., Case No.

1 08-11525 (BLS) (Bankr. D. Del.) (¶ 22), demonstrates that the true facts evidencing the Parent's

declining financial conditions were in existence prior to the February 13, 2000 Offering:

> Historically, the SemGroup Companies and their affiliates aimed to establish a
> margin on their anticipated purchases of product inventory by selling that product
> for physical delivery to customers or by entering into future delivery obligations
> under futures contracts on the NYMEX and OTC markets.  Through these
> transactions, the SemGroup Companies and their affiliates sought to maintain a
> position that is substantially balanced between purchases and sales or future
> delivery obligations.  Such transactions were always subject to a degree of risk.
> Rising commodity prices or an expectation of rising prices increased the cash
> needed to manage commodity price exposure and thereby increased liquidity
> requirements, limited amounts available through borrowing, and reduced the
> volume of petroleum products to be purchased.  The volatility experienced in
> petroleum product prices during the last two years has been unprecedented.  As a
> result, the SemGroup Companies' trading strategy began to fail.  For example,
> from January 2006 to June 2008, the NYMEX West Texas Intermediate
> benchmark price increased $66.75 per barrel.  During the three months ended
> March 31, 2008, the SemGroup Companies and their affiliates posted $1.96
> billion to satisfy margin deposit requirements, a 115% increase over the three
> months ended March 31, 2007.  During the twelve months ended December 31,
> 2007, the SemGroup Companies and their affiliates posted $1.70 billion to satisfy
> margin deposit requirements, a 159% increase over the twelve months ended
> December 31, 2006.

## COUNT I

### Against Defendants for Violation of Sections 11 of the Securities Act

43.     Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein

except those allegations that sound in fraud which are specifically excluded.  This Count is

asserted against all defendants for violations of Section 11 the Securities Act, 15 U.S.C. § 77(k).

44.     SemGroup Energy Partners is the issuer of the units sold pursuant to the February 13, 2008 Prospectus.  The Parent, General Partner, and the Individual Defendants signed the Registration Statement that incorporated the materially false and misleading Prospectus. Citigroup and Lehman acted as Lead Underwriters of the Offering.

45.     The Registration Statement, and accompanying Prospectus, was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and failed to disclose material facts as described above.

46.     The General Partner and the Individual Defendants as signatories of the Registration Statement, and the Lead Underwriters, failed to make a reasonable investigation or possess reasonable grounds for believing that the representations contained in the Registration Statement were true and that they disclosed all material facts.  Defendants are primarily liable under Section 11 of the Securities Act.

47.     Plaintiff and the other members of the Class acquired shares of SemGroup Energy Partners pursuant to, or traceable to, the Prospectus without knowing of untrue statements or omissions of material facts.

48.     Plaintiff and the other Class members have sustained damages.

49.     This action was brought within one year after the discovery of the untrue statements and omissions and within three years after SemGroup Energy Partners common units were offered to the public.

50.     By virtue of the foregoing, defendants have violated Sections 11 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of herself and the other members of the Class, prays for judgment as follows:

a.  Declaring this action to be a proper class action maintainable pursuant to Rule 23(b)(3) of the Fed.R.Civ.P. and declaring plaintiff to be a proper Class representative;

b.  Awarding plaintiff and the other members of the Class damages suffered as a result of the wrongs complained of herein together with appropriate interest;

c.  Awarding plaintiff and the other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d.  Awarding plaintiff and the other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues so triable.

Dated: July 24, 2008

Respectfully submitted,

WOLF POPPER LLP

By: _____
Robert C. Finkel (RF 2373)
Natalie M. Mackiel (NM 1948)
845 Third Avenue
New York, NY 10022
(212) 759-4600

*Attorneys for Plaintiff*

## LEAD PLAINTIFF CERTIFICATION

I, Charles D. Maurer, on behalf of the Charles D. Maurer SIMP Profit Sharing Plan f/b/o Charles D. Maurer (the "Profit Sharing Plan"), hereby states:

1.     I am the Trustee of the Profit Sharing Plan.  As Trustee, I am authorized to execute this certification on the Profit Sharing Plan's behalf.  I have authorized the filing of the attached complaint on behalf of the Profit Sharing Plan.

2.     The Profit Sharing Plan did not purchase any units of SemGroup Energy Partners, L.P., at the direction of counsel or in order to participate in this private action.

3.     The Profit Sharing Plan made the following transaction in SemGroup Energy Partners, L.P., partnership units on the February 13, 2008 public offering:

| Transaction | Trade Date | No. Of Units | Price Per Unit |
| --- | --- | --- | --- |
| Buy | 2.13.2008 | 225 | $23.90 |

4.     The Profit Sharing Plan has not served nor sought to serve, as a representative party on behalf of a class, in any action under the federal securities laws during the last three years.

5.     The Profit Sharing Plan will not accept any payment for serving as a representative party on behalf of a class except to receive its pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 24, 2008

Charles D. Maurer

Doc. 161195